UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-20648-CR-SCOLA

UNITED STATES OF AMERICA

    Plaintiff,

v.

GAL VALLERIUS,

    Defendant.
_____/

## MOTION TO SUPPRESS STATEMENTS AND PHYSICAL EVIDENCE

The Defendant, Mr. Gal Vallerius, by and through his undersigned counsel moves this Court to suppress certain statements and physical evidence which were acquired in violation of his Fourth, Fifth, and Sixth Amendment rights of the United States Constitution.

### FACTUAL BACKGROUND

In early 2017, Drug Enforcement Administration (DEA) agents began investigating the Dream Market and the Dream Forum, an online marketplace and forum on the dark web. In the course of their investigation, agents investigated a moderator in the forum known by the username "OxyMonster." Through their ongoing investigation, agents came to believe that the moderator in the Dream Forum known as "OxyMonster" was the same person as a vendor within the Dream Market, also known by the user name "OxyMonster." The agents monitored and analyzed the online actions of the moderator "OxyMonster."

1

The Dream Forum operates to give advice to online buyers and sellers in the Dream Market. In exchange for the advice given by Forum staff, users can contribute Bitcoin to a "Tip Jar." During the investigation of the moderator "OxyMonster," agents conducted an analysis of incoming and outgoing transactions to and from the "Tip Jar." Their investigation led them to believe that Bitcoin from the "Tip Jar" was going into online wallets controlled by a French National with the name Gal Vallerius.

The agents, using public information on social media, found the Defendant, a French National with the name Gal Vallerius. On August 25, 2017, Special Agent Lilita Infante of the Drug Enforcement Administration learned that Mr. Vallerius would be traveling from France to the United States with his wife. Agent Infante and Special Agent Bradley Langston requested assistance from Homeland Security Investigations (HSI) at the airport in Atlanta to conduct an inbound customs inspection of Mr. Vallerius' baggage and electronic devices.

On August 31, 2017 at approximately 1:05pm, Mr. Vallerius and his wife Yasmin Vallerius arrived in Atlanta, Georgia on Delta Flight #83 from France. They waited in a line at customs before presenting themselves to a customs officer. Yasmin Vallerius presented her passport to the customs officer and she was allowed to proceed through customs. Mr. Vallerius provided his passport, visa, and fingerprints to the customs officer. At this point, Mr. Vallerius and his wife were detained by Customs and Border Protection (CPB) Officers for a secondary inspection.

Mr. and Mrs. Vallerius were brought to an inspection room, where their belongings were searched. HSI Agent Stephen Lewis removed a laptop from Mr. Vallerius' backpack, a cell phone from Mr. Vallerius, and a cell phone and electronic tablet from Mrs. Vallerius. While being detained in this room, Agent Lewis told Mr. Vallerius that in the United States, they routinely check all electronic devices for child pornography. He asked Mr. Vallerius to provide his PIN codes and passwords to the laptop, phone, and tablet so that they could check the devices for child pornography. Believing that the search would be limited to an attempt to find child pornography, Mr. Vallerius complied and provided the PINs and passwords.

The agents conducted an extensive search of the laptop outside of the presence of Mr. Vallerius and his wife. Approximately two hours after the initial seizure of the devices, the agents returned to the inspection room and advised Mr. Vallerius that they found a Bitcoin Wallet on his desktop. Mr. Vallerius correctly responded that it is not illegal to have Bitcoins. The agents noted that the quantity contained in the laptop totaled nearly $500,000. The agents then separated Mr. Vallerius and his wife and placed them in separate rooms.

At approximately 3:12PM, the agents entered the room where Mr. Vallerius was being held. After identifying themselves, the agents present Mr. Vallerius with a form regarding his *Miranda* rights.[1] After a back-and-forth about Mr. Vallerius wanting a Hebrew interpreter and possibly a lawyer or a notary to advise him, the agents left the room.

---

[1] This interview was recorded, see Defense Ex. A.

3

They returned a short while later and advised Mr. Vallerius that he was being arrested for conspiracy to sell narcotics, operating a dark website, and money laundering. They advised Mr. Vallerius that he could be sentenced to 40 years or more for these charges. The agents acknowledged that Mr. Vallerius had asked for a Hebrew-speaking lawyer, but say that they would still like to provide Mr. Vallerius with the opportunity to give a statement or cooperate with them. They advised Mr. Vallerius that they had a pretty good case against him, and that once he was arrested and his information was made public, his chances of being able to provide substantial assistance would be vastly diminished. They advised Mr. Vallerius that they could not provide a Hebrew-speaking lawyer at that time, and again ask if he would waive his *Miranda* rights. Mr. Vallerius advised the agents that he came into possession of the Bitcoins after taking money out of his bank account and purchasing the Bitcoins. He again requested to have a lawyer present. At 3:45pm, the agents turned off the recording devices.

The day after Mr. Vallerius arrived in the United States, IRS Special Agent Santiago Aquino submitted an affidavit in support of the application for a search warrant regarding the devices collected at the airport.[2] Paragraphs 32-41 of the Affidavit outline the information that DEA agents had regarding "OxyMonster" prior to Mr. Vallerius' arrival in the United States. Paragraphs 42 and 43 attempt to establish the connection between "OxyMonster" and Gal Vallerius. Paragraphs 45 and 46 discuss the devices that were seized at the airport and the information that was discovered when the agents searched the laptop.

---

[2] See the attached Application for a Search Warrant, Defense Ex. 2

Based on this affidavit, the Application for a Search Warrant was granted. Federal agents proceeded to search these items and collect information that they intend to use in the prosecution of Gal Vallerius.

## ITEMS TO BE SUPPRESSED

Specifically, the items that the Defense seeks to suppress are: (1) the contents of the Samsung Notebook Computer (Serial Number JDFB91LD400133Y); (2) the contents of the iPhone 6 Apple Smart Phone (IMEI 35531308008865); (3) the contents of the iPad Tablet (Serial Number F9FTH6FXH); (4) the contents of the iPhone 6 Apple Smart Phone (IMEI 359213070957143) (collectively, "the devices" or "the electronic devices"); and (5) all statements made by Mr. Vallerius, including the PINs and passwords to these devices.

## MEMORANDUM OF LAW

### THE FIFTH AMENDMENT VIOLATION

**Mr. Vallerius, while in custody and without *Miranda* warnings was asked questions which were designed to elicit incriminating information; The Information from those Statements Must Be Suppressed**

Statements made during a custodial interrogation may not be introduced as evidence against the individual unless he or she is first informed of specific rights. *Miranda v. Arizona*, 384 U.S. 436 (1966). "Interrogation may encompass more than express questions and may include words or actions that are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291 (1980). In this case, when the agents asked Mr. Vallerius for the PINs and passwords to the devices, Mr. Vallerius was in custody and the questions were designed to elicit

incriminating information. Therefore, the responses given by Mr. Vallerius, as well as any information obtained as a result of these statements, must be suppressed.

Mr. Vallerius was in custody at the time of the statements. The test for whether one is in custody for purposes of *Miranda* is whether "under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement to such an extent that he would not feel free to leave." *United States v. Muegge*, 225 F.3d 1267, 1270 (11th Cir. 2000). Mr. Vallerius was detained upon his arrival in the United States. He was not allowed to pass through the customs barrier at the airport, and certainly no reasonable person would believe that they could leave an interrogation room while being questioned by government agents. Mr. Vallerius not allowed to leave the custody of the government agents; he was not allowed into the United States and he had no way to get back on a plane to leave the United States. Certainly, Mr. Vallerius was in custody at the time that he was questioned by the officers.

Mr. Vallerius was being interrogated at the time of the statements. The term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Holland v. Florida*, 775 F.3d 1294, 1321 (11th Cir. 2014) (quoting *Rhode Island v. Innis*, 446 at 301). In this case, the agents who asked Mr. Vallerius for his PINs and passwords already suspected Mr. Vallerius of crimes. They also suspected that evidence of those crimes would be on his electronic devices.

6

When they opened the devices and found that they were password protected, they sought the passwords in order to retrieve the incriminating information. The agents did not ask Mr. Vallerius for the PINs and passwords in order to do a standard border search; they were specifically looking for evidence of the crimes that they suspected him of committed. By asking him for the PINs and passwords to his devices, they were seeking to elicit incriminating information and evidence against Mr. Vallerius in what was an ongoing investigation.

Mr. Vallerius' statements and the information obtained by those statements must be suppressed because they were not preceded by adequate *Miranda* warnings or a valid waiver by Mr. Vallerius of his *Miranda* rights. *Miranda* prescribed that individuals in custody must be given the following warnings prior to interrogation:

> [A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford any attorney one will be appointed for him prior to any questioning if he so desires.

*Florida v. Powell*, 559 U.S. 50, 60 (2010) (quoting *Miranda*, 384 U.S. at 479). Waiver of these rights is an absolute prerequisite to interrogation when an individual is being held for questioning. Here, Mr. Vallerius was not informed of his *Miranda* rights until after the incriminating information was obtained from him and after the agents used that incriminating information to perform a search of his devices. It was only after the agents had elicited the information that they informed Mr. Vallerius of his rights. As soon as Mr. Vallerius was informed of these rights, he invoked his right to counsel, indicating that if he had knowledge of his *Miranda*

7

rights prior to providing his PINs and passwords, he would not have answered the agents' questions.

Because the information that Mr. Vallerius provided was given in violation of his Fifth Amendment rights under the United States Constitution, and without a valid waiver of those rights, the statements themselves as well as any information obtained from those statements must be suppressed.

## THE FOURTH AMENDMENT VIOLATIONS

**Absent the information illegal obtained from the electronic devices, there would not be probable cause for the issuance of a search warrant; Therefore, the information found in the devices and pursuant to the search warrant must be suppressed**

The Fourth Amendment of the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. "To invoke the protections of the Fourth Amendment, a person must… demonstrate a subjective expectation that his activities would be private, and he must show that his expectation was one that society is prepared to recognize as reasonable." *United States v. Robinson*, 62 F.3d 1325 (11th Cir. 1995). The Fourth Amendment prohibits unreasonable searches. *Morgan v. United States*, 323 F.3d 776, 780 (9th Cir. 2003).

Of course, there is a significant exception to some Constitutional Fourth Amendment restrictions at the country's borders. Routine searches of travelers and their belongings do not necessarily require the same level of suspicion as a search within the borders of the United States. *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985). However, notwithstanding a traveler's diminished

expectation of privacy at the border, searches there are still measured by the United States Constitution's Fourth Amendment reasonableness requirement, which considers the nature and scope of the search. *United States v. Cotterman*, 709 F.3d 952, 967 (9th Cir. 2013). While probable cause may not be required to conduct a search at the border, there is still a reasonableness requirement at the border. *Montoya de Hernandez*, 473 U.S. at 538. Measured against this reasonableness requirement, as well as the invalid consent to search, the search of Mr. Vallerius' devices was unlawful.

<u>The Consent to Search the Devices Was Not</u>
<u>Knowing and Voluntary</u>

A person may waive his Fourth Amendment rights under the United States Constitution by consenting to a search. *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004). However, consent has effect only when it is given freely and voluntarily. *Carter*, 378 F.3d at 587. "Whether consent was free and voluntary so as to waive the warrant requirement of the Fourth Amendment is a 'question of fact to be determined from the totality of the circumstances.'" *Carter*, 378 F.3d at 587, quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). The government bears the burden of showing consent was freely and voluntarily given. *Laing v. United States*, 891 F.2d 683, 686 (8th Cir. 1989). The government must show that a reasonable person would have believed that the subject of a search gave consent that was the product of an essentially free and unconstrained choice, and that the subject comprehended the choice that he or she was making." *United States v. Cedano-Medina*, 366 F.3d 682, 684 (8th Cir. 2004). Here, while in an inherently

9

coercive environment, Mr. Vallerius' decision to give the agents consent to search the devices was not a free and unconstrained choice. While Mr. Vallerius provided his PINs and passwords, which might indicate consent, that consent was not freely and voluntarily given.

Mr. Vallerius' apparent consent was given based on false information and deception, and therefore it is not free and voluntary consent. Deception and trickery are among the factors that can render consent involuntary. *United States v. Harrison*, 639 F.3d 1273 (10th Cir. 2011) (upholding the suppression of evidence found in the search of home where law enforcement agents lied about the reason they wanted to search the home); *United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977) (holding that the failure of IRS agents to apprise the defendant of the criminal nature of the investigation constituted deliberate deception making the consent to search invalid). Misrepresentations about the nature of an investigation may be evidence of coercion. *United States v. Turpin*, 707 F.2d 332, 334 (8th Cir. 1983). Here, the agents told Mr. Vallerius that they were searching for child pornography on his devices. Mr. Vallerius, believing that the search would be limited to child pornography, based his consent on this deception. This deceit by the agents vitiated any consent given by Mr. Vallerius.

Further, the agents told Mr. Vallerius that a search for child pornography was routine at the border. Calling this search "routine," while Mr. Vallerius was clearly in custody, communicated to Mr. Vallerius that he had no choice but to permit the search. Officers may not convey a message that compliance with a

request is required. *Florida v. Bostick*, 501 U.S. 429, 435 (1991). By explicitly saying that the search of the laptop was routine, the agents were conveying the message that this was part of the typical customs procedure and that Mr. Vallerius did not have the option to deny consent.

Additionally, Mr. Vallerius did not fully understand the choice being made because he was heavily under the influence of narcotics at the time consent is alleged. Factors that the Court should consider when determining if consent is freely and voluntarily given include 1) age, 2) general intelligence and education, 3) whether the individual is under the influence of drugs or alcohol, 4) whether he was informed of his *Miranda* rights, and 5) whether he had experienced prior arrests and was thus aware of the protections the legal system affords suspected criminals. *United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990).

Mr. Vallerius was under the influence of narcotics at the time that he landed in the United States and at the time that the agents asked to search his computer. He had not yet been read his *Miranda* rights. Mr. Vallerius has no prior history with the criminal justice system, so he was not aware of the protections afforded to suspected criminals. Even further, Mr. Vallerius is not from the United States, so the familiarity that might come with being exposed to American culture was not something from which Mr. Vallerius could benefit. Taking these factors into account, Mr. Vallerius did not give free and voluntary consent to search the devices.

11

Without free and voluntary consent or a search warrant, there was no legal way for the agents to search the devices.³ All of Mr. Vallerius' devices were PIN or password protected. It would have been impossible to search any of the password protected items without either Mr. Vallerius' free and voluntary consent or a search warrant.

<u>Even If the Consent to Search the Devices was Valid, the<br>Search of the Devices Exceeded the Scope of the Consent</u>

Even if this Court determines that Mr. Vallerius gave valid consent, that consent was limited in scope. Specifically, Mr. Vallerius gave the agents permission to search for child pornography. "It is a violation of a suspect's Fourth Amendment rights for a consensual search to exceed the scope of the consent given." *United States v. McWeeney*, 454 F.3d 1030, 1034 (9th Cir. 2006). The scope of consent is determined by asking "what would the typical reasonable person have understood by the exchange between the officer and the subject." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). A validly authorized search conducted pursuant to consent is still limited by the terms of the authorization. *United States v. Rackley*, 742 F.2d 1266 (11th Cir. 1984).

In this case, Mr. Vallerius was told that the agents needed to perform a routine search for child pornography. Under these circumstances, a reasonable person would believe that the agents were going to look for pictures of videos on his

---

³ The Defense acknowledges the recent opinion in *United States v. Vergara*, No. 16-15059 (Mar. 15, 2018), but believes *Vergara* is distinguishable from the case at bar. In *Vergara*, the devices being searched were not password protected. Therefore, there was no consent required to gain access to the devices. Here, because passwords protected the devices, the agents needed either consent (by way of revealing the passwords) or a warrant to break through the password protections.

devices. Instead, these agents opened applications and documents on the devices where there was no indication that child pornography would be stored in those places. The agents opened an application called "Wallet," as well as text documents stored on Mr. Vallerius' desktop. No reasonable person would believe that child pornography would be contained on a wallet application or in a text document. The scope of the consent was limited to places where agents might reasonably find child pornography. Because they exceeded the scope of the consent, all of the items that were found or searched, and the information derived from them, must be suppressed.

<u>Without the Information Illegally Obtained from the Devices,<br>the Affidavit Used to Obtain the Search Warrant<br>Would Not Have Contained Probable Cause</u>

Using the information on Mr. Vallerius' electronic devices, agents submitted an affidavit for a search warrant, which was granted. In order to be valid, the Fourth Amendment of the United States Constitution requires that warrants be based "upon probable cause, supported by oath or affirmation." U.S. Const. Amend IV. In order to pass constitutional muster, there must be a sufficient nexus between the criminal conduct and the items to be seized or searched. *United States v. Anderson*, 851 F.2d 727 (4th Cir. 1988). "There must be a substantial basis to conclude that the instrumentalities of crime will be discovered on the searched premises." *United States v. Lockett*, 675 F.2d 843, 846 (11th Cir. 1982). Evidence obtained in violation of the Fourth Amendment of the United States Constitution, which is included in a search warrant affidavit, may invalidate a search warrant if

it is critical to establishing probable cause for the issuance of the warrant. *United States v. Karo*, 468 U.S. 705, 720 (1984). Following the procedure in *Franks v. Delaware*, 438 U.S. 154, 172 (1978), the Court must redact the tainted evidence and determine if sufficient untainted evidence is present in the affidavit to establish probable cause. *U.S. v. Bergin*, 732 F.Supp.2d 1235 (M.D. Fla. 2010).

Without the information unlawful obtained from the electronic devices there would not be any nexus between the devices and the alleged crimes, and therefore there would be no probable cause for the search of the electronic devices. While the agents had information that Mr. Vallerius might be engaged in illegal activity, the *only* evidence that the electronic devices contained evidence of that illegal activity was obtained during the illegal search.

Because of the violations of Mr. Vallerius' rights under the Fourth, Fifth, and Sixth Amendments of the United States Constitution, he respectfully requests that all information obtained from the electronic devices be suppressed. Also, any information obtained indirectly with that information should also be suppressed as fruits of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471 (1963). Further, any information obtained by the search warrant must be suppressed because the affidavit in support of the warrant did not have probable cause without the nexus between the devices and the crime. *Franks v. Delaware,* 438 U.S. 154, 172 (1978).

                        Respectfully submitted,
                        MICHAEL CARUSO
                        FEDERAL PUBLIC DEFENDER

By:   */s/ Anthony J. Natale*_____
       Anthony J. Natale
       Supervisory Assistant Federal Public Defender
       Florida Bar No. 296627
       150 West Flagler Street, Suite 1500
       Miami, Florida 33130-1556
       Tel:  (305) 533-4246/Fax: (305) 536-4559
       E-mail: anthony_natale@fd.org

       */s/ Lauren Field Krasnoff*_____
       Lauren Field Krasnoff
       Assistant Federal Public Defender
       Florida Bar No. 86951
       150 West Flagler Street, Suite 1700
       Miami, Florida 33130-1556
       Tel:  (305) 533-4193/Fax: (305) 536-4559
       E-mail: lauren_krasnoff@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on **March 19, 2018**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  */s/Anthony J. Natale*