# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 17-CR-20648-SCOLA

**UNITED STATES OF AMERICA**

**v.**

**GAL VALLERIUS,**

      **Defendant.**

_____/

### THE UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE [DE:23]

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Response in Opposition to Defendant's, Gal Vallerius's Motion to Suppress Evidence and Statements [DE:23].  Because the Defendant was traveling from France into the United States when he and his electronic equipment were inspected at the airport, the authority to search his electronic equipment was not derived from the Defendant's consent.  Rather, it arose from well-established border search authority.  Notwithstanding this, a search warrant was also lawfully obtained to search the Defendant's electronic equipment.  Furthermore, the United States maintains there was no violation of the Defendant's *Miranda* rights when he voluntarily provided his password but even if there was, because there is no derivative evidence rule for a *Miranda* violation, suppression of the electronic devices is not appropriate.  In support thereof, the United States avers as follows:

### FACTS

On August 31, 2017, the Defendant, who was the target of an ongoing investigation into the sale and distribution of narcotics via a dark net marketplace known as "Dream Market," and

his wife landed in Hartsfield-Jackson International Airport in Atlanta, Georgia on a flight from Charles de Gaulle International Airport in Paris, France.[1]

After presenting themselves and their belongings to Customs and Border Protection (hereinafter, "CBP"), for primary inspection, the Defendant and his wife were escorted to a separate section of the same room for a secondary inspection.  During the secondary inspection, agents obtained a laptop and cell phone belonging to the Defendant, as well as a cell phone and electronic tablet belonging to the Defendant's wife (hereinafter the electronic devices).

During the secondary inspection, as is customary during a border search, an agent requested the Defendant provide him with the password to the electronic devices so they could search for evidence of criminal activity or contraband such as child pornography.  The Defendant provided his password.

The Defendant's laptop was taken to another room to be searched.  A cursory search reveled electronic files on the Defendant's desktop identifying the Defendant as a vendor on Dream Market using the moniker "OxyMonster."

 After approximately fifteen to twenty minutes, law enforcement returned to the inspection area and advised the Defendant that they had found a Bitcoin wallet on his computer desktop and requested the password for that account.  The Defendant's initial response was that no password was necessary, but then responded saying he did not have the password.

Subsequently, agents arrested the Defendant and seized the electronic devices.  The Defendant was given his *Miranda* warnings and, after requesting a Hebrew lawyer, provided no further statements.  Accordingly, the United States will not be seeking to introduce any statements made by the Defendant subsequent to his arrest.

---

[1]  The Defendant was suspected of using the moniker "Oxymonster" on Dream Market.

The following day, agents obtained a warrant authorizing the search of the electronic devices seized at the airport. The affidavit in support of the warrant, which is 29 pages and contains 72 paragraphs, details the Government's investigation into the Defendant and his drug trafficking activities on Dream Market. Importantly, only one paragraph, paragraph 46, mentions the airport boarder search. It states:

A border search of the laptop in [the Defendant's] possession confirmed his identity as "OxyMonster." On his laptop was the TOR browser, apparent log-in credentials for Dream Market, and a PGP encryption key entitled "OxyMonster" which matched that advertised as "OxyMonster's" on Dream Market." (Footnote omitted).

After the warrant was obtained, the electronic devices were searched and additional, incriminating evidence was found to include transaction lists detailing the Defendant's customers, the quantity of narcotics delivered and the price for the narcotics in bitcoin.

## ARGUMENT

### The Defendant was not in custody and thus not entitled to *Miranda* warnings when he was questioned during the boarder inspection

The Defendant first argues that when the airport agents asked him for the password to the electronic devices, the Defendant was in custody and entitled to *Miranda* warnings because the questions were designed to elicit incriminating information. However, none of the cases provided by the Defendant in support of this argument occurred at the border.

It is well settled that an individual is not in custody when being questioned at the border. Consequently, *Miranda* warnings are not required. While the Fifth Amendment provides individuals with a right against self-incrimination, the *Miranda* rule has a special application in the context of questioning at the border. As explained by the Eleventh Circuit in *United States v. Jayousi*, "because of the sovereign interest in securing entry points to the United States, some degree of questioning and of delay is necessary and is to be expected at entry points." 657 F.3d

1085, 1109 (11th Cir. 2011) (internal quotation marks and citation omitted).  As a result, "questioning at the border must rise to a distinctly accusatory level before it can be said that a reasonable person would feel restraints on his ability to roam to the degree associated with formal arrest." *Id.* (internal quotation marks omitted).  Put another way, because a reasonable person should expect a certain degree of questioning and processing at the border, "events which might be enough often to signal 'custody' away from the border will not be enough to establish 'custody' in the context of entry into the country." *United States v. Moya*, 74 F.3d 1117, 1120 (11th Cir. 1996).  Indeed, restrictions on an individual's movement that are the result of a routine border inspection do not entitle an individual to *Miranda* warnings. *See United States* v. *Manta-Carillo*, 491 F. App'x 125, 128 (11th Cir. 2012) ("[W]e recognize that [the defendant] was unable to leave the [ship] and the [ship] was unable to leave the port during the inspections; however, these restrictions on his movements were the result of a routine border inspection.").

In the instant case, when the Defendant was asked to provide his password, he was undergoing a routine, secondary inspection.  While he was in a designated area, he was nonetheless still in the same room with his fellow passengers who were also undergoing inspection.  He was not handcuffed, restrained or physically searched.  Furthermore, he was not asked any accusatory questions much less questioned to a "distinctly accusatory level" so as to signal a formal arrest.  Consequently, *Miranda* warnings were not required to be given prior to asking the Defendant for his password.

Assuming *arguendo* that the password was obtained in violation of *Miranda*, suppression of the electronic devices is still not a remedy available to the Defendant.  The contents of the Defendant's electronic devices were voluntarily prepared by him and thus not testimonial.  Consequently, they do not enjoy Fifth Amendment protection.  (*See In re Boucher*, D. Vt., Feb 19, 2009*; United States v. Hubbell*, 530 U.S. 27, 36, 120 S. Ct. 2037, 147 L. Ed. 2d 24 (2000))  The "physical evidence that is located as a result of an unwarned statement need not be suppressed as

4

the fruit of the *Miranda*-tainted statement." *United States v. Patane*, 542 U.S. 630, 124 S. Ct. 2620, 159 L. Ed. 2d 667 (2004).

Since there is no derivative evidence rule for *Miranda* violations, suppression of the electronic devices is not appropriate.

## **Border searches do not require a warrant or probable cause**

Border searches of people and property entering the United States may be conducted without a warrant and without a showing of probable cause. *United States v. Ramsey*, 431 U.S. 606, 619 (1977); *Alfaro-Moncada*, 607 F.3d at 728; *Vega-Barvo*, 729 F.2d at 1344. Such searches are reasonable "simply by virtue of the fact that they occur at the border." *Ramsey*, 431 U.S. at 616; *Alfaro-Moncada*, 607 F.3d at 728.

The border search exception is based on the recognition that the expectation of privacy is lower at the border than in the interior. *Montoya de Hernandez*, 473 U.S. at 539; *accord Alfaro-Moncada*, 607 F.3d at 728. The balance of those interests is both "qualitatively different" and "struck much more favorably" to the United States at the border. *Montoya de Hernandez*, 473 U.S. at 538, 540, 544; *accord Alfaro-Moncada*, 607 F.3d at 728, 730; *see United States v. Flores-Montano*, 541 U.S. 149, 152 (2004) ("government's interest in preventing entry of unwanted persons and effects is at its zenith at international borders").

The recognition that border searches without probable cause and without a warrant are "nonetheless 'reasonable' has a history as old as the Fourth Amendment itself." *Ramsey*, 431 U.S. at 619. "Routine [border] searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *Montoya de Hernandez*, 473 U.S. at 538. The applicability of this border search doctrine to electronics was confirmed as recently as last month in *United States. v Vergara*, No. 16-15059 (Mar 15, 2018). Considering

forensic searches of the defendant's cell phones at the border, the *Vergara* Court opined: "Border searches never require a warrant or probable cause. At most, border searches require reasonable suspicion." *Id.* Therefore, the inspection of the Defendant's laptop during the routine border search did not require a showing of probable cause and there was no violation of the Defendant's Fourth Amendment right. Therefore, the Defendant's general Fourth Amendment claim fails and the physical evidence should not be suppressed.

## The Defendant's consent to the search of his laptop is irrelevant

The Defendant further argues that he did not knowingly or voluntarily consent to the search of his devices. While factually incorrect, this argument is nevertheless irrelevant.

When he arrived at the airport in Atlanta, the Defendant, who was not in custody, was told that his password would be needed so the agents could search his laptop for evidence of criminal activity or contraband. Knowing this, the Defendant provided the password so the agents could search. Consequently, the United States maintains the Defendant's consent was knowingly and voluntarily given. However, because the authority to search the devices stems from the agents' well-settled border search authority and not the defendants consent, a consent analysis is unnecessary.

International travelers know that, by virtue of their voluntary decision to present themselves for entry into the United States, they are subject to the government's plenary search authority. *See, e.g., Ramsey*, 431 U.S. at 623 n.17; 5 Wayne R. LaFave, Search & Seizure § 10.5(a) at 232 (5th ed. 2012) ("[S]ince the individual crossing a border is on notice that certain types of searches are likely to be made, his privacy is less invaded by those searches.") (internal quotation marks omitted). Knowing this, travelers have options: they can avoid traveling to the United States; they can leave their personal technology devices behind; or they can remove from their

personal technology devices any information that they would not want searched.  *See id.*

Although the Defendant knowingly and voluntarily provided his password knowing the agents were going to search the electronic devices for evidence of criminal activity or contraband, the agents had independent authority under the border search doctrine to search the electronic devices irrespective of the Defendant's consent.[2]

**The search warrant affidavit contained probable cause to**
**search the electronic  devices notwithstanding any**
**<u>information gleaned from the border search</u>**

The Defendant argues that absent the information illegally obtained from the electronic devices, there would not be probable cause for the issuance of a search warrant.  Consequently, he argues information found in the devices pursuant to the search warrant must be suppressed.

Notwithstanding Supreme Court's holding in *Ramsey* that Border searches of people and property entering the United States may be conducted without a warrant and without a showing of probable cause and, putting aside the lawful nature of the Defendant's search at the airport, the affidavit in support of the search warrant nevertheless contains sufficient probable cause to support a warrant to search the electronic devices.

To determine whether probable cause exists, "the issuing magistrate is simply to make a practical common sense decision of whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place."*Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 (1983).

While included in one of the 72 paragraphs in the search warrant affidavit, the agent did

---

[2] In his motion the Defendant also claims he was "heavily under the influence of narcotics at the time of his consent."  This unsupported allegation is belied by the Defendant's own exhibit.  In his post arrest recording, the Defendant has a coherent conversation with the agents where he acknowledges understanding his rights and asks for a Hebrew speaking attorney.  When questioned in the end if he was okay, the Defendant says he is only tired making no mention of the use of narcotics during his lengthy international flight.

not solely rely on the information obtained from the devices pursuant to the border search to establish probable cause for the issuance of the warrant.  The search warrant affidavit provides probable cause consisting of a detailed account of the investigation into the Defendant and his association with Dream Market.  Thus, the use or non-use of the information retrieved from the devices pursuant to the border search does not alter the level of probable cause.

The entirety of the reference to the border search in the search warrant affidavit is a mere three sentences:

> "A border search of the laptop in [the Defendant's] possession confirmed his identity as 'OxyMonster.'  On his laptop was the TOR browser, apparent log-in credentials for Dream Market, and a PGP encryption key entitled 'OxyMonster' which matched the advertised as 'OxyMonster's' on Dream Market." (Footnote omitted).

Regardless of the information obtained pursuant to the border search, the affidavit contained sufficient probable cause for the issuance of the warrant.  That probable cause included: "OxyMonster's" account on Dream Market; "OxyMonster's" profile information advertising for the sale and distribution of drugs from France to the United States; the analysis of the writing styles of "OxyMonster's" profile on Dream Market compared to Defendant's accounts on Instagram and Twitter; along with evidence that 15 out of 17 outgoing transactions from the "OxyMonster" tip jar went to multiple wallets controlled by the Defendant.

"[T]he probable cause standard is a 'practical, nontechnical conception.'  In dealing with probable cause, ... [courts] deal with probabilities." *Illinois v. Gates*, 462 U.S. 213, 231, 103 S. Ct. 2317, 2328, 76 L. Ed. 2d 527 (1983) *citing Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).  Therefore, there was ample probable cause to support the search warrant of the Defendant's devices even if the information obtained at the airport is omitted.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the United States of America respectfully requests that this Court deny the Defendant's Motion to Suppress Statements and Physical Evidence.

Respectfully Submitted,

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

By:     *s/Juan A. Gonzalez, Jr.*
JUAN A. GONZALEZ, JR.
Assistant United States Attorney
Florida Bar No. 897388
11200 NW 20th Street, Suite 101
Miami, Florida 33172
Tel: (305) 715-7640 / 7653
Fax: (305) 715-7639
E-mail: Juan.Antonio.Gonzalez@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 2, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*s/Juan A. Gonzalez, Jr.*
JUAN A. GONZALEZ, JR.
Assistant United States Attorney