```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                     Case No. 17-20648-Cr-SCOLA

UNITED STATES OF AMERICA,      )
                               )
             Plaintiff,        )
                               )
        -v-                    )
                               )
GAL VALLERIUS,                 )
                               ) Miami, Florida
             Defendant.        ) June 12, 2018
----------------------------) 9:03 a.m.


                        Pages 1-30

           TRANSCRIPT OF ARRAIGNMENT and PLEA COLLOQUY

          BEFORE THE HONORABLE ROBERT N. SCOLA, JR.

                     U.S. DISTRICT JUDGE

APPEARANCES:

For the Government        U.S. DEPARTMENT OF JUSTICE
                          CRIMINAL DIVISION
                          BY:  CATHERINE ALDEN PELKER
                          1301 New York Avenue, NW - Suite 600
                          Washington, DC  20530

                          JUAN A. GONZALEZ, ESQ.
                          Assistant U.S. Attorney
                          11200 NW 20th Street - Suite 101
                          Miami, Florida  33172

For the Defendant         ANTHONY J. NATALE
                          LAUREN F. KRASNOFF
                          Assistant Federal Public Defenders
                          150 West Flagler Street
                          Miami, Florida  33130

                          (Interpreters present)

REPORTED BY:              WILLIAM G. ROMANISHIN, RMR, FCRR, CRR
(305) 523-5558            Official Court Reporter
                          400 North Miami Avenue
                          Miami, Florida  33128
```

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

```
 1            (Call to order of the Court)

 2            THE COURT:  Good morning, everyone.  Welcome.  Please

 3    be seated.

 4            All right.  Our first matter this morning is the

 5    United States of America versus Gal Vallerius.

 6            Who's here on behalf of the Government?

 7            MS. PELKER:  Good morning, Your Honor.  Alden Pelker

 8    and Tony Gonzalez for the United States.

 9            MR. GONZALEZ:  Good morning, Your Honor.

10            THE COURT:  Good morning.

11            And who's here on behalf of Mr. Vallerius?

12            MR. NATALE:  Good morning, Your Honor.  Anthony

13    Natale and Lauren Krasnoff from the Federal Public Defender's

14    Office on behalf of Mr. Vallerius, who's present with the aid

15    of a Hebrew interpreter.

16            THE COURT:  All right.  Good morning.

17            And good morning, Mr. Vallerius.

18            THE DEFENDANT (through the interpreter):  Good

19    morning, Judge.

20            THE COURT:  So the first matter we need to take up is

21    to arraign him on the superseding information.

22            MR. NATALE:  That's correct, Your Honor.

23            We have executed a Waiver of Indictment, which may I

24    approach and give to the clerk?

25            THE COURT:  Yes.
```

```
 1              All right.  So let's swear in Mr. Vallerius.
 2              Please stand and raise your right hand to be sworn.
 3         GAL VALLERIUS, DEFENDANT, SWORN AND TESTIFIED THROUGH THE
 4    INTERPRETER
 5              THE COURTROOM DEPUTY:  Please be seated.  Thank you.
 6              THE COURT:  What is your full name?
 7              THE DEFENDANT:  Gal Vallerius.
 8              THE COURT:  Do you understand that you're now under
 9    oath and if you answer any of my questions falsely, those
10    answers could later be used against you in another prosecution
11    for perjury or making a false statement?
12              THE DEFENDANT:  Yes.  It is clear, Your Honor.
13              THE COURT:  How old are you?
14              THE DEFENDANT:  36.
15              THE COURT:  And how many years of schooling did you
16    complete or what is the highest grade level you finished?
17              THE DEFENDANT:  High school.
18              THE COURT:  Are you able to read and write in Hebrew?
19              THE DEFENDANT:  Yes, of course.
20              THE COURT:  Are you able to read and write in
21    English?
22              THE DEFENDANT:  Somewhat.
23              THE COURT:  All right.  And Mr. Natale or
24    Ms. Krasnoff, how was the waiver of the indictment and other
25    legal documents translated for Mr. Vallerius?
```

1           MR. NATALE:  Your Honor, prior to today, all of these
2      were translated by a Hebrew interpreter, and we were able to
3      also go over them and discuss them in English.
4           Mr. Vallerius speaks and reads English.  However, for
5      the legal terms, it was very important to have the actual
6      Hebrew interpreter.
7           THE COURT:  All right.  Is that correct,
8      Mr. Vallerius?
9           THE DEFENDANT:  That's correct, Your Honor.
10          THE COURT:  Have you ever been treated for any mental
11     illness?
12          THE DEFENDANT:  No.
13          THE COURT:  Today in court are you under the
14     influence of any drugs, alcohol, narcotics or medications?
15          THE DEFENDANT:  No, Your Honor.
16          THE COURT:  Have you taken any drugs, alcohol,
17     narcotics or medication in the past 48 hours?
18          THE DEFENDANT:  No, Your Honor.
19          THE COURT:  And do you understand that as a defendant
20     in a criminal case here in the United States you have the
21     right to make the Government bring the charges against you by
22     way of an indictment, where evidence is presented to a grand
23     jury and that grand jury would decide whether or not to
24     present the formal charges?  Do you understand you have that
25     right?

1    THE DEFENDANT:  Yes, Your Honor.

2    THE COURT:  In fact, in your case there was an

3 indictment and a superseding indictment that was presented by

4 the grand jury.  But the Government has now filed a

5 superseding information in the case.

6    So do you agree that the Government can proceed with

7 the prosecution in this case by way of this superseding

8 information instead of by getting a superseding indictment?

9    THE DEFENDANT:  Yes.

10    THE COURT:  Have you spoken to your attorneys about

11 this decision to waive the indictment?

12    THE DEFENDANT:  No.

13    THE COURT:  I have a document called a Waiver of

14 Indictment.  Your signature is there.

15    Did you sign this?

16    THE DEFENDANT:  Yes, yes, Your Honor.

17    THE COURT:  Okay.  And before you signed it, did you

18 talk to your attorneys about it?

19    THE DEFENDANT:  Yes.  They explained it to me, Your

20 Honor.

21    THE COURT:  All right.  Did they explain to you that

22 you have the right to make the Government go forward with the

23 prosecution by way of an indictment?

24    THE DEFENDANT:  Without going to court, yes, Your

25 Honor.

1        THE COURT:  Do you agree that the Government can in

2   fact proceed against you in this case by way of a superseding

3   information instead of getting another superseding indictment?

4        THE DEFENDANT:  Yes, Your Honor.

5        THE COURT:  And did you sign this Waiver of

6   Indictment after consulting with your attorneys?

7        THE DEFENDANT:  Yes, Your Honor.

8        THE COURT:  Did anybody promise you anything or force

9   you or threaten you in any way or coerce you in any way to get

10  you to sign the Waiver of Indictment?

11       THE DEFENDANT:  No, Your Honor.

12       THE COURT:  All right.  So I'm going to find the

13  defendant has freely, knowingly and voluntarily waived the

14  right to proceed by indictment.  So I'm going to sign the

15  Waiver of Indictment.

16       Let's arraign him on the superseding information.

17       MR. NATALE:  Your Honor, at this time we would waive

18  formal reading of the superseding information and enter a plea

19  of not guilty to each of the charges.  Rather, I think I'm

20  doing it that way rather than saying not guilty, so then we've

21  got to go back and forth over it.

22       THE COURT:  All right.  And is there any additional

23  discovery the Government would be providing relevant to the

24  superseding information?

25       MS. PELKER:  No, Your Honor.  The Government has

1    provided discovery to defense counsel.

2          THE COURT:  All right.  So I'll enter a plea of not

3    guilty.  The standing discovery order will be entered.

4          And does he now wish to change his plea?

5          MR. NATALE:  Yes, Your Honor.  At this time we'd like

6    to change our plea.

7          THE COURT:  All right.  Mr. Vallerius, is it your

8    desire at this time to plead guilty to the two charges in the

9    superseding information?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  All right.  Prior to today, have you had

12   a chance to speak to your attorneys about the charges in the

13   superseding information, about in general what type of

14   evidence the Government would have against you, and about any

15   possible defenses you may have in the case?

16         THE DEFENDANT:  They spoke with me.

17         THE COURT:  Have you also spoken to them about the

18   plea agreement and about the decision whether to plead guilty

19   or go to trial?

20         THE DEFENDANT:  Yes.  This is in accordance with the

21   agreement that I have in front of me right now and I give my

22   consent to it.

23         THE COURT:  Are you fully satisfied with the

24   representation and advice that has been provided to you by

25   your attorneys?

1            THE DEFENDANT:  Yes, absolutely.

2            THE COURT:  Is there anything concerning your

3    attorneys' representation or advice that you are not satisfied

4    with?

5            THE DEFENDANT:  No.  With reference to them,

6    everything is fine.

7            THE COURT:  And you understand that your sentence is

8    going to be calculated pursuant to the Federal Sentencing

9    Guidelines?

10            THE DEFENDANT:  Yes.

11            THE COURT:  And the way the guidelines work is that

12   points are added or subtracted for a number of different

13   reasons.  So, for example, the crime or crimes that you are

14   pleading guilty to give a certain number of points.  If it's a

15   crime involving drugs, the more drugs that are involved, the

16   more points could be added.  If it's a crime involving money

17   laundering, the more money that is involved in the

18   transactions, the points could be added.

19            When there are two crimes like that, then the

20   guideline range of each of them is calculated separately and

21   then there is some kind of formula to put them back together

22   to have one overall guideline range.

23            If you accept responsibility truthfully, points could

24   be deducted.  If several people commit a crime together and

25   someone has a major role compared to other people, points

1    could be added.  If someone has a minor role compared to other

2    people, points could be deducted.

3            There may be other factors that the Court considers

4    in calculating a guideline score, and at the end of that

5    calculation it gives an advisory sentencing guideline range.

6            Do you understand that, in general, that is how the

7    guidelines work?

8            THE DEFENDANT:  I do.

9            THE COURT:  Do you also understand, once I determine

10   the advisory guideline range, I can sentence you to somewhere

11   within that range, but I can also vary or depart and give a

12   sentence that is greater than that, or I can vary or depart

13   and give a sentence that is less than that?

14           THE DEFENDANT:  I do, Your Honor.

15           THE COURT:  In your plea agreement, you and your

16   lawyers and the Government may have agreed to make certain

17   recommendations to me as to how you I should calculate your

18   guideline score.

19           Do you understand that, although I will most likely

20   go along with those recommendations, I am not legally

21   obligated to do so; and if I calculate your guidelines in a

22   different way than your plea agreement asks me to, that does

23   not give you the right to withdraw your plea?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Do you also understand that if your

1    attorneys or anyone else has told you what they think your

2    ultimate sentence is going to be, that is just an estimate,

3    it's not binding on the Court, and it does not give you the

4    right to withdraw your plea if the estimate is incorrect?

5              THE DEFENDANT:  Yes.

6              THE COURT:  All right.  I want to go over the terms

7    of your plea agreement here in open court to make sure we're

8    all on the same page.

9              Do you understand that you have agreed to plead

10   guilty to the two counts in the superseding information.

11   Count 1 charges you with a conspiracy to distribute a

12   controlled substance.  It alleges that between November 2013

13   through August 2017, in the Southern District of Florida and

14   elsewhere, you knowingly and willfully agreed with others to

15   distribute a controlled substance, and that the controlled

16   substance involved in the conspiracy attributable to you as a

17   result of your own conduct and the conduct of other

18   conspirators that was reasonably foreseeable to you involved a

19   detectable amount of heroin, a detectable amount of cocaine, a

20   detectable amount of cocaine base, a detectable amount of

21   methamphetamine, a detectable amount of oxycodone, a

22   detectable amount of Ritalin, and a detectable amount of

23   fentanyl.

24             Count 2 charges you with a conspiracy to commit money

25   laundering.  It alleges that between November 2013 through

1    August 2017, you knowingly and willfully conspired and agreed

2    with others to engage in a financial transaction affecting

3    interstate and foreign commerce, which transaction involved

4    the proceeds of specified unlawful activity, knowing that the

5    property involved in the transaction represented the proceeds

6    of some form of unlawful activity and knowing that the

7    transaction was designed, in whole and in part, to conceal and

8    disguise the nature, location, source, ownership and control

9    of the proceeds of the specified unlawful activity.

10          It is further alleged that the specified unlawful

11   activity was the felonious manufacture, importation,

12   receiving, concealment, buying, selling or otherwise dealing

13   in a controlled substance, in violation of Title 21, United

14   States Code, Section 846 and 841(a)(1); the manufacture,

15   importation, sale or distribution of a controlled substance in

16   violation of the laws of France, fraud and related activity in

17   connection with identification documents and access devices,

18   fraud and related activity in connection with computers, in

19   violation of 18, United States Code, Section 1030.

20          Do you understand that those are the two crimes and

21   the elements of the crimes that you're pleading guilty to?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Do you understand as to Count 1, the

24   maximum penalty you could receive is up to 20 years in prison

25   followed by at least three years of supervised release and up

```
 1    to life of supervised release.  In addition to the term of
 2    imprisonment and supervised release, I may impose a fine of up
 3    to one million dollars, and I may order forfeiture and
 4    restitution.
 5            As to Count 2, the maximum penalty you could receive
 6    is up to 20 years followed by up to three years of supervised
 7    release, a fine of up to $500,000 or twice the value of the
 8    property involved in the offense.  I also may order forfeiture
 9    and restitution, and I may also impose a civil penalty in the
10    greater of the value of the property, funds or monetary
11    instruments involved in the offense, or $10,000.  I may impose
12    the sentences concurrently, but I also may impose them
13    consecutively.
14            So the total response you're possibly facing is 40
15    years in prison.
16            I must also impose a special assessment of $100 on
17    each of the two counts, for a total of $200.
18            Do you understand those are the maximum penalties
19    that you are facing?
20            THE DEFENDANT:  Yes, Your Honor.
21            THE COURT:  All right.  Again, here in the plea
22    agreement there are recommendations to me as to how I should
23    calculate your guideline range.
24            There is a recommendation that the quantity of drugs
25    that should be considered is more than 90 kilograms of heroin,
```

more than 450 kilograms of cocaine, more than 25.2 kilograms
of cocaine base, more than 45 kilograms of methamphetamine,
more than 13.5 kilograms of oxycodone, more than 900 kilograms
of Ritalin, and more than 36 kilograms of fentanyl.

As to Count 2, which is the money laundering offense,
there is a recommendation that the offense level would be
determined by using the drug quantities that I just listed
above; that you would be convicted under 18, United States
Code, Section 1956, pursuant to Guideline Section
2S1.1(b)(2)(B); and that pursuant to 2S1.1(b)(3), the offense
involved sophisticated laundering.

There is an agreement that you would receive a
three-level increase as a manager and supervisor of criminal
activity that involved five or more participants.  There is an
agreement to recommend that the adjusted offense level before
acceptance of responsibility would be a level 42.

Then there's a recommendation that you would receive
up to three levels' reduction for acceptance of responsibility
if you fully and truthfully accept responsibility in the case.

There's a further recommendation that you and your
attorneys and the Government will recommend that I impose a
sentence of the statutory maximum for each count, and that
those sentences would run concurrently with each other.

So since we know the statutory maximum is 20 years
for each count, there's a recommendation to me that your

1  sentence would be 20 years in the case, and that neither party

2  would recommend varying upward or downward when determining

3  the sentence.

4          Do you understand that?

5          THE DEFENDANT:  I do understand, Your Honor.  I just

6  would like to clarify something with my lawyer.

7          THE COURT:  Absolutely.

8          (Inaudible discussion off the record)

9          THE DEFENDANT:  I understand, Your Honor.

10         THE COURT:  Let me ask the parties, because I don't

11  understand something, because if you do the math and you're

12  recommending that the guideline range is 42, minus three for

13  acceptance of responsibility, that would give a total offense

14  level of 39 if he has no prior record.  Level 39 has a

15  guideline range of 262 to 327.  So you're recommending a

16  sentence of 240 months.  Both sides are recommending a

17  sentence that's below the guidelines.

18         So what is the intent of the agreement then?

19         MR. GONZALEZ:  Sorry, Your Honor.  The guideline

20  range is --

21         THE COURT:  Am I reading it right?  I don't know.

22  I'm looking at level 39, 262 to 327.

23         MR. GONZALEZ:  There would be a 20-year statutory

24  maximum for the offense.

25         THE COURT:  Right.  But without an agreement, if

```
 1    somebody had two counts of 20 years each and the guideline
 2    range was 262 -- and again, I don't know what my sentence will
 3    be -- but if I wanted to give a sentence within the
 4    guidelines, I would give 240 months on Count 1 and 22 months
 5    consecutive on Count 2 to get to the guideline range.
 6            MR. GONZALEZ:  Correct.  The Court would normally go
 7    ahead and do that to get to the guideline range.
 8            THE COURT:  So it seems to me the parties are
 9    agreeing that the sentence should be 20 years.
10            MR. GONZALEZ:  Correct.
11            THE COURT:  Which is below the guidelines.
12            MR. NATALE:  That's correct, Your Honor.
13            THE COURT:  So it's kind of inconsistent when you're
14    saying neither side is going to ask me to depart.  Do you mean
15    neither side is going to ask me to depart further?
16            MR. NATALE:  Further from the guidelines.
17            MR. GONZALEZ:  Further from the guidelines.
18            THE COURT:  Okay.  And is that also your
19    understanding, Mr. Natale?
20            MR. NATALE:  That is correct, Your Honor.
21            THE COURT:  Is that your understanding,
22    Mr. Vallerius?
23            THE DEFENDANT:  Yes, Your Honor.
24            THE COURT:  All right.  There is also a part of the
25    plea agreement where you have agreed to fully cooperate with
```

1    the Office of the United States Attorney.  Do you understand

2    that?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  What that means is that you have to make

5    yourself available to meet informally with either the

6    prosecutors and/or the agents.  You have to appear to testify

7    at any hearings, proceedings or trials, and at all times you

8    must tell the truth.

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Do you understand the truth is not what

11   you think the Government may want you to say and it's not what

12   you think any coconspirators may want you to say; it's what

13   really happened?

14             THE DEFENDANT:  Yes, of course.

15             THE COURT:  Do you also understand that, even if you

16   fully and truthfully cooperate, it is entirely and solely up

17   to the Office of the United States Attorney to evaluate the

18   extent of your cooperation, and it is entirely up to that

19   office to decide whether it believes your cooperation has been

20   substantial enough either to ask me to depart further below

21   the guidelines at the time of your sentencing, or if you

22   cooperate after your sentencing, it's entirely up to that

23   office to decide whether or not to file a motion to reduce

24   your sentence based upon your cooperation?  I cannot make them

25   do that and you cannot make them do that.

```
 1              Do you understand that?

 2              THE DEFENDANT:  Yes, I understand that.

 3              THE COURT:  All right.  Your agreement also requires

 4    that you forfeit to the United States any monies or properties

 5    that were either used in the commission of the crimes or

 6    derived from the crimes.  Do you understand that?

 7              THE DEFENDANT:  Yes.  My lawyers explained to me that

 8    the items mentioned here are limited to the scope of the

 9    agreement.

10              THE COURT:  And the agreement limits the forfeiture

11    to a Samsung notebook computer, 99.98 bitcoin, and 129.94

12    bitcoin cash.

13              Do you understand that?

14              THE DEFENDANT:  Yes, Your Honor.

15              THE COURT:  What's the difference between bitcoin and

16    bitcoin cash?

17              MR. GONZALEZ:  Two different types of --

18              THE COURT:  I want him to tell me.  I hope you would

19    know.

20              THE DEFENDANT:  They actually changed the system of

21    which those two coins are created.  They separated their

22    mechanical way of creation in a way from the bitcoin and the

23    bitcoin cash.

24              THE COURT:  All right.  And as part of your plea,

25    you're agreeing to the entry of orders of forfeiture for that
```

```
 1   property.  You're agreeing and admitting that the conduct
 2   described in the indictment and factual proffer provides a
 3   sufficient factual and statutory basis for the forfeiture of
 4   the property.
 5           You're also agreeing to fully cooperate with the
 6   Government in all forfeiture proceedings and sign any
 7   documents, provide any passwords, waive any defenses you may
 8   have to the forfeiture, including a defense under the Eighth
 9   Amendment of the United States Constitution that the
10   forfeiture might constitute an excessive fine or penalty.
11           You're agreeing to waive any time limits for the
12   initiation of forfeiture proceedings, and you're waiving any
13   right to appeal the forfeiture.
14           Do you understand that?
15           THE DEFENDANT:  Yes.
16           THE COURT:  Under the terms of the plea agreement you
17   have agreed to not make a request under the International
18   Prisoner Transfer Program until such time as your cooperation,
19   as earlier set forth in the agreement, is complete or three
20   years from the date of your arrest, whichever comes first.  Do
21   you understand that?
22           THE DEFENDANT:  Your Honor, can I have a moment to
23   look at something?
24           THE COURT:  Yes.
25           (Inaudible discussion off the record)
```

1    THE DEFENDANT:  Yes.  I'm sorry, Your Honor.  It is

2  clear to me.

3    THE COURT:  All right.  And do you also understand

4  that as part of the plea agreement the Government has agreed

5  that it will not object to your request to be transferred

6  under the International Prisoner Transfer Program as long as

7  you abide by all of the conditions of the plea agreement.  But

8  you are also acknowledging and understanding that the U.S.

9  Attorney's Office has no authority to grant or deny your

10  request, but they do have the authority to not object.  Do you

11  understand that?

12    THE DEFENDANT:  I'm sorry, Your Honor.  There's a

13  little minor change here.

14    THE COURT:  Okay.

15    (Inaudible discussion off the record)

16    MR. NATALE:  Judge, may I approach?

17    THE COURT:  Yes.

18    MR. NATALE:  Your Honor, what we have done is written

19  out what was the agreement of the parties which didn't get

20  into the final copy, and we have initialed it.  All parties

21  have initialed that addition.

22    And what it reads is that the office agrees to

23  recommend to Department of Justice, DOJ, and to the Department

24  of State to grant the defendant's request.

25    THE COURT:  All right.  So let's go over the terms

1    related to the International Prisoner Transfer Program again

2    so we make sure we understand each other.

3           Paragraph 18 of the plea agreement, in that paragraph

4    you, Mr. Vallerius, agree that you will not make a request

5    under the International Prisoner Transfer Program until your

6    cooperation has concluded or three years from the date of your

7    arrest, whichever comes first.  So that remains the same.

8           Is that still your understanding?

9           THE DEFENDANT:  Yes, Your Honor.  That is the same.

10          THE COURT:  All right.  And the next paragraph

11   indicates that the U.S. Attorney's Office agrees that it will

12   recommend to the Department of Justice and the Department of

13   State to grant your request under the International Prisoner

14   Transfer Program to be transferred back to -- is it Israel

15   that you would be transferred to under that program?

16          MR. NATALE:  Your Honor, we don't know for sure,

17   because at this point he's a citizen of both Israel, France

18   and Great Britain.

19          THE COURT:  Okay.  And it's his option as to which of

20   the countries he wants to go to?

21          MR. NATALE:  That's correct.

22          THE COURT:  Those countries, I assume, have to agree

23   to take him.

24          MR. NATALE:  They have to agree.  That's why the

25   recommendation is just that it be approved.  But at this point

1    we don't know which specific country.

2           THE COURT:  All right.  Is that your understanding,

3    Mr. Vallerius?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  Also, in the United States, generally, a

6    defendant in a criminal case has the right to appeal many

7    different aspects of his or her sentencing.  But under the

8    terms of your plea agreement you have agreed to waive or give

9    up certain of your rights to appeal.

10          If I impose a sentence that exceeds the statutory

11   maximum or if I vary or depart above the guideline range, or

12   if the Government files an appeal of your sentence, then you

13   can also appeal your sentence.

14          But do you understand, under the terms of your plea

15   agreement, if one of those three things does not happen you

16   cannot appeal your sentence?

17          THE DEFENDANT:  I understand.

18          THE COURT:  All right.  And by this plea of guilty

19   and under the terms of your plea agreement, you are

20   specifically waiving or giving up any rights you may have

21   under 28, United States Code, Section 1291, to assert any

22   claim that either the statutes to which you are pleading

23   guilty are unconstitutional and/or the admitted conduct does

24   not fall within the scope of the statutes of conviction.  Do

25   you understand that?

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  Other than what is in this written plea

3  agreement, has anybody made you any additional promises in

4  order to get you to plead guilty this morning?

5      THE DEFENDANT:  No.

6      THE COURT:  Has anybody forced you, threatened you or

7  coerced you in any way to get you to plead guilty?

8      THE DEFENDANT:  No.

9      THE COURT:  Are you pleading guilty to Counts 1 and 2

10  of the superseding information because you are in fact guilty

11  of those two offenses?

12      THE DEFENDANT:  I do.

13      THE COURT:  All right.  Are those your signatures on

14  the last page of both the plea agreement and the factual

15  proffer?

16      THE DEFENDANT:  Yes, this is my signature.

17      THE COURT:  All right.  And except for that one

18  handwritten change in paragraph 19, which we just spoke about,

19  do you agree with all the terms and conditions that are in the

20  plea agreement?

21      THE DEFENDANT:  I do.

22      THE COURT:  And do you also agree with all of the

23  facts that are set forth in the written factual proffer you

24  signed?

25      THE DEFENDANT:  Yes.

```
 1              THE COURT:  Do you understand that if I accept your
 2     plea of guilty, you will be adjudicated guilty of two felony
 3     offenses; and if you are a United States citizen, you could
 4     lose valuable civil rights, such as the right to vote, the
 5     right to hold office, the right to serve on a jury and right
 6     to possess a firearm; and if you are not a United States
 7     citizen, you will be removed or deported from the United
 8     States; you will not be allowed to return to the United
 9     States; you will not be allowed to later become a citizen of
10     the United States; and there are other adverse consequences to
11     your immigration status as well?  Do you understand that?
12              THE DEFENDANT:  I do understand everything you said,
13     Your Honor.  And it is unfortunate that this may happen, that
14     I cannot enjoy this beautiful country and everything that it
15     does offer, sincerely.  I do understand everything you said.
16              THE COURT:  You originally entered a plea of not
17     guilty to the charges in the superseding information, and I
18     want you to understand that you have the absolute right to
19     continue to plead not guilty; and if you did, you would have
20     the right to have a trial before a judge or jury at which you
21     would be presumed to be innocent and the Government would be
22     required to prove your guilt beyond a reasonable doubt.
23              You would have the right to the assistance of your
24     attorneys throughout the entire trial; the right to confront
25     and cross-examine the witnesses who testify against you; the
```

```
 1    right to compel the attendance of witnesses to testify on your

 2    behalf and to compel the production of documents and other

 3    physical evidence to assist you in your defense.

 4         You would have the right to testify or not testify;

 5    and if you chose to not testify, your silence could not be

 6    used against you and you would still be presumed to be

 7    innocent.  And if you lost the trial, you could appeal your

 8    conviction to a higher court.

 9         Do you understand that by pleading the guilty this

10    morning, there will be no trial in your case and you're giving

11    up all of those rights that you would have had at a trial?

12         THE DEFENDANT:  It is very clear to me, Your Honor.

13         THE COURT:  All right.  And Mr. Vallerius, do you

14    agree that if we had gone to trial, the Government of the

15    United States would have been able to prove the following

16    facts beyond a reasonable doubt:

17         That beginning in or around November 2013, a criminal

18    online marketplace own as Dream Market began operating on the

19    TOR -- that's T-O-R -- dark web network.  Dream Market was

20    designed to promote and facilitate the anonymous sale of

21    illegal items.  Eventually Dream Market website became one of

22    the largest dark web criminal marketplaces.

23         By way of example, on August 29, 2017, three days

24    before your arrest, there were 94,000-plus listings on Dream

25    Market, including 47,000 plus listings for drugs, including
```

1  stimulants, opioids, ecstasy, barbiturates, cannabis,

2  psychedelics, steroids.

3       There were 41,000 digital goods listings, including

4  fraud, fraud-related hacking, drug paraphernalia, 456

5  listings; services, over 3,000 listings, including hacking,

6  IDs and passports; and over 2,300 other listings, including

7  counterfeits.

8       By virtue of the size and scope of the marketplace as

9  well as the infrastructure, it was the intent of the operators

10 and vendors on Dream Market to distribute over 90 kilograms of

11 heroin, more than 450 kilograms of cocaine, more than 25.2

12 kilograms of cocaine base, more than 45 kilograms of

13 methamphetamine, more than 13.5 kilograms of oxycodone, more

14 than 900 kilograms of Ritalin, and more than 36 kilograms of

15 fentanyl.

16      All of the items and services on Dream Market were

17 offered for sale in exchange for bitcoin and other peer-to-

18 peer virtual currencies; and to further promote anonymity and

19 otherwise conceal and disguise the nature, location, source,

20 ownership and control of the proceeds of these illicit sales,

21 purchasers were made primarily in bitcoin or other virtual

22 currency using Dream Market's escrow services in that a buyer

23 would transfer funds from his own account or virtual currency

24 wallet into a Dream Market account or wallet.

25      Dream Market would then subsequently transfer the

1   funds to the seller's account or wallet upon satisfaction of

2   the terms of the sale, and in doing so, Dream Market provided

3   a tumbling or mixing service which scrambled the multiple

4   buyer bitcoin transactions together to conceal the bitcoin

5   payments from buyer to seller or commission payments to the

6   administrators.  Thus, there was no direct bitcoin transaction

7   between the buyer and seller.

8       You first participated in the conspiracy by becoming

9   a vendor on Dream Market, and as a vendor, you sold oxycodone

10  and Ritalin under the moniker Oxymonster.  Shortly thereafter,

11  Dream Market employed you and you acted as an administrator

12  and senior moderator.  In those positions you played a role

13  supporting the daily illicit transactions between buyers and

14  vendors on Dream Market, such as the trafficking in narcotics

15  and the laundering of illicit proceeds using virtual

16  currencies, Dream Market's tumblers and the dark web.  And

17  this was done in concert with additional known and unknown

18  administrators, moderators and vendors on Dream Market.

19      And over the course of the investigation, DEA agents

20  made numerous undercover online purchases of crystal meth, LSD

21  and hydrocodone from various vendors on Dream Market and

22  received the drugs via U.S. mail to various locations within

23  the Southern District of Florida.

24      Do you agree that those facts could have been proven

25  by the Government?

1          THE DEFENDANT:  I do.

2          THE COURT:  I'm just trying to understand -- and

3    again, if this is going to interfere with the Government's

4    investigation or cooperation, then tell him not to answer

5    this.  But if this whole system is designed with anonymity and

6    you're just one of these anonymous people out there using it

7    initially, how do you become an administrator?  How do they

8    know that you are a responsible person to administer this?

9          MR. NATALE:  Your Honor, could we come sidebar and

10   explain that?

11         THE COURT:  No.  If it's something that shouldn't be

12   public, tell me it shouldn't be public right now.  I don't

13   need to know.

14         MR. NATALE:  I can tell you, what happens is that the

15   owner --

16         THE COURT:  I'm more concerned about the Government,

17   whether they're concerned about whether --

18         MS. PELKER:  Your Honor, I think there are a number

19   of ways to answer the question.

20         MR. NATALE:  Then you answer it as the expert from

21   the Government.

22         MS. PELKER:  The defendant, through his actions on

23   the site, rose through the ranks initially as a vendor, and

24   then through enough esteem among the marketplace, he was

25   approached to join the administrative team.

```
 1          THE COURT:  It sounds like you're giving reviews on

 2     Yelp and you keep giving good reviews that are validated by

 3     other people, and if Yelp doesn't know really who you are,

 4     they'll give you some special status as a reviewer, like that?

 5          MS. PELKER:  Your Honor, it is surprisingly like

 6     that.  There is a five-star vendor rating system.

 7          THE COURT:  Okay.

 8          MR. NATALE:  Judge, the owner of the site is the one

 9     who looks at all of this stuff, and people who get high

10     ratings -- there was actually, I think, four or maybe five

11     other people who were also moderators in the same way.

12          THE COURT:  All right.  Getting back, do you agree

13     that those facts could have been proven at trial,

14     Mr. Vallerius?

15          THE DEFENDANT:  Yes, Your Honor.

16          And I also indicated to my lawyers that the

17     administration services provided -- the administration

18     participation on my behalf was based on the notifications made

19     on the website between the various vendors and buyers.

20          THE COURT:  All right.  So how do you plead to Counts

21     1 and 2 of the superseding information which charges you with

22     a conspiracy to distribute a controlled substance and a

23     conspiracy to commit money laundering?  Do you plead guilty or

24     do you plead not guilty?

25          THE DEFENDANT:  Guilty.
```

1          THE COURT:  All right.  I find the defendant is fully

2     competent and capable of entering an informed plea and he is

3     aware of the nature of the charges and the consequences of the

4     plea.  I find the plea is freely, knowingly and voluntarily

5     entered.

6          I also find his partial waiver of appeal is freely,

7     knowingly and voluntarily entered.

8          I further find the plea is supported by an

9     independent basis in fact which contains each of the essential

10    elements to the two offenses to which he's pleading guilty as

11    is more fully set forth in the written factual proffer.

12         I'm going to accept his plea of guilty and adjudicate

13    him guilty of Counts 1 and 2 and order a presentence

14    investigation report.

15         I'll set sentencing for August 23, 2018, at 8:30 a.m.

16         MR. NATALE:  Your Honor, I'm sorry.  What was the

17    date again?

18         THE COURT:  August 23rd.  School starts like that

19    week.  Is everybody back in town then or no?

20         MR. NATALE:  Your Honor, could we put this into like

21    late September?

22         THE COURT:  Yes.

23         Do you have an objection to that?

24         MR. GONZALEZ:  No objection, Your Honor.

25         The 26th through the 28th I'm out.  But other than

```
 1    that, any day is fine.
 2             THE COURT:  What about September 25th?
 3             MR. NATALE:  That's fine, Your Honor.
 4             MR. GONZALEZ:  Fine.
 5             THE COURT:  I'll set sentencing for September 25th at
 6    8:30 a.m.
 7             Is there anything further from either the Government
 8    or the defense?
 9             MS. PELKER:  None from the Government, Your Honor.
10             MR. NATALE:  No, Your Honor.
11             THE COURT:  All right.  Mr. Vallerius, good luck to
12    you.  We'll see you back in a couple of months.  Okay?
13             THE DEFENDANT:  Thank you very much, Your Honor.
14    Have a nice day.
15             THE COURT:  Okay.  Make sure Jacob gets the originals
16    back.
17             All right.  We're in recess on this case.  Thank you.
18             (Recessed at 9:58 a.m.)
19        *    *    *    *    *    *    *    *    *    *
20                    C E R T I F I C A T E
21
22        I certify that the foregoing is a correct transcript
23    from the record of proceedings in the above-entitled matter.
24
25
```