UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  17-CR-20648-SCOLA(s)(s)

UNITED STATES OF AMERICA

vs.

GAL VALLERIUS,

          **Defendant.**
_____/

UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION FOR RETURN OF PROPERTY [DE:72]

The United States of America, by and through the undersigned Acting United States Attorney, hereby responds to the defendant, Gal Vallerius,' *pro se* Motion for Return of Seized Property [DE 72].

FACTUAL AND PROCEDURAL BACKGROUND

On August 31, 2017, the Defendant arrived from Europe at Hartsfield-Jackson International Airport in Atlanta Georgia.  Upon his arrival at the airport, a border search of his laptop computer[1] confirmed his identity as "OxyMonster", a narcotics seller and moderator on the Dark Web marketplace Dream Market.   Dream Market sold, among other things, illegal narcotics and facilitated the laundering of funds using Dream Market's tumblers to obfuscate the ownership of virtual currencies such as Bitcoin and Bitcoin Cash.

On the Defendant's laptop was the TOR browser[2], apparent log-in credentials for Dream

---

[1] Samsung Model NP270E5E Notebook Computer
[2] TOR" is free software for enabling anonymous communication. TOR's intended use is to protect the personal privacy of its users, as well as their freedom and ability to conduct confidential communication by keeping their Internet activities from being monitored.

Market, $500,000 worth of bitcoin, and a PGP encryption key titled, "OxyMonster," which matched that advertised as OxyMonster on Dream Market.[3] Vallerius was apprehended, and certain property was taken from him and his wife, Yasmin Vallerius (Yasmin). He was subsequently transferred into federal custody and charged.

On June 12, 2018, the Defendant pled guilty to a Superseding Information charging him with Conspiracy to Possess with the Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, and Conspiracy to Launder Money, in violation of Title 18, United States Code, Section 1956(h). Specifically, count one charged the Defendant with conspiring to possess with the intent to distribute more than 90 kilograms of heroin, more than 450 kilograms of cocaine, more than 25.2 kilograms of cocaine base (crack), more than 45 kilograms of methamphetamine, more than 13.5 kilograms of oxycodone, more than 900 kilograms of Ritalin, and more than 36 kilograms of Fentanyl. Furthermore, as part of his plea agreement, the Defendant agreed to forfeit his laptop computer, approximately 99.98947177 Bitcoin, and approximately 121.94805811 Bitcoin Cash. [DE:49].

On October 9, 2018 the defendant was sentenced to 240 months' incarceration. [DE:61]. The above forfeiture was finalized shortly thereafter.

---

[3] Persons who are involved with dark web narcotics trafficking utilize public key encryption to communicate with other purchasers and sellers on the marketplace in order to provide information such as a shipping address. If the message was not encrypted, it would be visible by the administrators of the dark web marketplace, and by law enforcement, if the marketplace server was ever located and seized. Public key encryption allows the sender of a message to encrypt that message using a long and unique passcode known as a public key, which the recipient of the message publicly provides to anyone wishing to communicate with them. That message, in turn, can only be decrypted by the recipient using a corresponding private key known only to them. The most commonly used encryption is known as Pretty Good Privacy (PGP) encryption. Almost all dark web marketplace vendor profiles advertise a public PGP key for this purpose. Therefore, the PGP key doubles as a unique fingerprint that is visible across dark web platforms.

## THE DEFENDANT'S MOTION[4]

Construed liberally, the Defendant's *pro se* motion asks for return of the following property allegedly taken from him:

1) Two iPhone 7 cellular phones,

2) One iPad,

3) a blue dossier (folder)

4) multiple credit cards in his and his wife's name,

5) a secured encrypted USB disk on key,

6) his clothing, and

7) a copy/mirror of his forfeited laptop's hard drive.

## LEGAL STANDARD

A Rule 41(g) movant seeking return of property, such as the defendant, must first demonstrate that he is entitled to the property. United States v. Melquiades, 394 F. App'x 578, 580 (11th Cir. 2010). The Government may rebut the movant's allegation with evidence that "it has a legitimate reason to retain the property, that it does not possess the property, or that the property has been destroyed." Id. (internal citations omitted). As further explained below, while the United States does not oppose returning one of the iPhones after being wiped, there is no basis for returning the other items, providing a copy/mirror of his laptop's hard drive, or returning items that are not in the government's possession. Indeed, the United States cannot return items it does not have. See United States v. Cobb, 703 F. App'x 879, 882 (11th Cir. 2017).

---

[4] While the Defendant asserts in his motion that he has attempted to retrieve the subject items by contacting the undersigned, the undersigned first learned of this request through the instant motion.

### iPhone (Defendant's)[5]

At the time of his arrest, the Defendant's iPhone was seized. The iPhone contained 38,526 images, 4522 videos, 2983 audio files, What's App chats involving money laundering, apps to log into crypto currency accounts, and text messages in Hebrew and French. Indeed, a cursory look at the images on the phone reveal many pertaining to money laundering such as the one in Attachment A, which depicts the Defendant carrying a large stack of currency. Accordingly, while the United States does not object to the return of the Defendant's iPhone, before returning the iPhone, the DEA intends to wipe it so that it cannot be used for any criminal concerns.

Contraband and instrumentalities of a crime are not contemplated to be returned. *See* Fed. R. Crim. P. 41 advisory committee's note (2009) ("It was not the intent of the amendment to leave the property owner without an expectation of the timing for return of the property, excluding contraband or instrumentalities of crime, or a remedy.") The defendant cannot reasonably request the return of electronic data concerning narcotics sales information or money laundering after his convictions for conspiracy to distribute a controlled substance and money laundering.

### iPhone[6] and iPad belonging to the Defendant's Wife

As indicated in the DEA report in Attachment B, which memorializes the Defendant's arrest and the seizure of his property, an iPhone and iPad were seized from the Defendant's wife, Yasmin. This iPhone contained 25,095 photos, 670 audio files and 1384 video files. The iPad contained 8,423 images as well as text messages confirming Bitcoin transactions. Importantly, both devices show logins into Yasmin's email account and text messages addressed to Yasmin evidencing her ownership of the devices. Since the Defendant is not the owner of these devices

---

[5] Serial Number DNPSQFL9HG7Q
[6] Serial Number FK1S94Q1HG7Q

nor were they taken from him, he cannot demonstrate that he is entitled to the property. As such, the United States objects to returning these items to him. The United States does not object to returning these items to Yasmin however, just like the Defendant's iPhone above, the electronics will be wiped so that they cannot be used for any criminal concerns.

**Blue dossier (folder)**

At the time of his arrest, a blue folder was seized from the Defendant. The folder contained various documents pertaining to the Defendant's criminal conduct in various languages. For example, as evidenced in Attachment C, the folder contained a medical certificate in French used by the Defendant to obtain oxycontin and Ritalin, two drugs he then sold on Dream Market. The folder also contained a Greek translation of this document used by the Defendant in an attempt to obtain these drugs in Greece. See Attachment D. In the folder were also documents evidencing the purchase of real estate by the Defendant in Greece with laundered funds and documents memorializing Bitcoin transactions. Accordingly, these items are contraband or instrumentalities of crime, and the United States would object to their return to the Defendant.

**Credit cards**

Contrary to the Defendant's pleading, and as evidenced in the DEA report in Attachment B, no credit cards were seized from him. Rather, five Bitcoin <u>debit</u> cards and two credit cards were seized form Yasmin. See Attachment E. Like Yasmin's iPhone and iPad above, the Defendant is not the owner of these cards nor were they taken from him. As such, he cannot demonstrate that he is entitled to the property. Accordingly, the United States objects to returning these items to him. The United States would note the Bitcoin debit cards are likely fruits of the instant offenses and will be dealt as such should Yasmin request their return.

**Secured encrypted USB disk on key and clothing**

As evidenced in the DEA report in Attachment B, no USB disk-on-key was seized from the Defendant nor were his clothes taken by the United States. Rather, the clothes are likely in the possession of the Bureau of Prisons. As indicated above, the United States cannot return items it does not have. *See* United States v. Cobb, 703 F. App'x 879, 882 (11th Cir. 2017).

**Copy/mirror of his forfeited laptop's hard drive**

The Defendant's laptop contained 398,532 images and 33,836 videos. Many of these pertained directly to the instant offenses. Moreover, the laptop contained drug sale ledgers, apps used to access the Dark Web as well as crypto currency exchanges and wallets. Indeed, through his laptop, the Defendant conducted his drug sales, acted as moderator for Dream Market and laundered funds. Accordingly, the Defendant agreed to the forfeiture of his laptop and all of its' contents. Consequently, there is no authority under which he is entitled to a copy or mirror of his hard drive. While there are surely images and videos of sentimental value not related to the instant offense on the hard drive, it is unreasonable to ask the Government to sort through more than 432,000 files to parcel those out for the Defendant. As such, the United States objects to providing a copy of the hard drive.

**Fuze Card**

While not mentioned in his pleading, a Fuze card was seized from the Defendant. The United States has no objection to its return.

## CONCLUSION

WHEREFORE, as indicated above, the United States does not object to returning the Defendant's iPhone after wiping it nor does the Government object to the return of the Defendant's Fuze card. If the Defendant wants these items, his authorized representative can obtain them by contacting the DEA. The United States, however, objects to the return to the Defendant of any of the other items he requests.

Respectfully submitted,

 /s/ Juan Antonio Gonzalez 
Juan Antonio Gonzalez
Acting United States Attorney
Florida Bar No. 897388
99 NE 4th Street
Miami, Fl 33132
Email: juan.antonio.gonzalez@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 23, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and by mail to Gal Vallerius, #71037-019, FCI Miami, P.O. Box 779800, Miami, FL 33177.

s/Juan A. Gonzalez, Jr.
JUAN A. GONZALEZ, JR.
Assistant United States Attorney